IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                              No. 12-10089-03-JTM

GONZALO RAMIREZ,
    Defendant.

MEMORANDUM AND ORDER

Defendant Gonzalo Ramirez was convicted of conspiring with other members of the Norteño criminal gang to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), *see* 18 U.S.C. § 1962(d). He was also convicted of various violent crimes in aid of racketeering, *see id*. § 1959 (VICAR), and multiple firearm counts, *see id*. § 924(c)(1)(A). The matter is now before the court on Ramirez's motions to vacate his conviction and sentence under 28 U.S.C. § 2255. As explained below, the court grants the defendant's motions as to one of the charges of conviction, but otherwise denies his claims.

Following the trial, the jury convicted Ramirez of (Count 1) conspiracy to violate Racketeer Influenced Corrupt Organizations Act by agreeing to commit the racketeering acts of drug trafficking and aggravated assault, in violation of 18 U.S.C. § 1962(d). The jury also convicted Ramirez of committing numerous violent crimes in aid of the

racketeering, including (Count 2) conspiracy to commit murder; (Count 3) first degree murder; (Count 4) attempted murder; (Count 5) assault with a dangerous weapon; (Count 6) possessing and discharging a firearm in furtherance of a crime of violence; (Count 7) assault with a dangerous weapon; (Count 8) conspiracy to commit assault with a dangerous weapon; (Count 9) possessing and brandishing a firearm in furtherance an aggravated robbery; (Count 10) conspiracy to commit murder; (Count 11) attempted murder; (Count 12) assault with a dangerous weapon; and (Count 13) possessing and discharging a firearm in furtherance of a crime of violence, namely aggravated assault. All of the violent crime counts charge violations of 18 U.S.C. § 1952(a), except Counts 6, 9, and 13, which allege the violation of 18 U.S.C. § 924(c)(1)(A).

Ramirez directly appealed his convictions to the United States Court of Appeals for the Tenth Circuit, arguing that (1) the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose promises made to a cooperating witness; (2) the government put on false evidence at trial in violation of *Napue v. Illinois*, 360 U.S. 264 (1959); (3) the jury was incorrectly instructed that the jurisdictional element of RICO required showing only a minimal effect on interstate commerce; (4) the statute prohibiting violent crimes in aid of racketeering activity (VICAR) was unconstitutionally applied because Ramirez's violent crimes did not affect interstate commerce; and (5) the district court erroneously admitted testimonial hearsay under the guise of a gang expert's opinion, in violation of the Confrontation Clause. *See United States v. Garcia/Ramirez*, 793 F.3d 1194, 1199 (10th Cir. 2015).

2

In his original Motion to Vacate, the defendant presented four arguments: (1) his conviction was the product of government misconduct, with the government violating *Brady* based on using the testimony of Mr. Worthey;[1] (2) the indictment was defective for not using willfulness aiding and abetting language;[2] (3) that defendant's convictions based on § 924(c) were invalid in light of *Johnson II* and *Dimaya*, because the underlying crime of violence is vague;[3] and (4) constitutionally ineffective assistance of counsel in the investigation, failing to seek a bill of particulars, failing to obtain the exclusion of evidence, failing to impeach or effectively cross-examine witnesses, failing to seek a reduction for minor role, and failing to object to the indictment.[4]

Ramirez subsequently filed an additional timely motion to vacate (Dkt. 1272) within one year of his conviction, which reinforced this previously advanced third argument relating to vagueness. Since then—and beyond the allowed time for collateral attack under 28 U.S.C. § 2255—Ramirez has added eight further claims, including: (5) that his counsel was constitutionally ineffective in failing to preserve defendant's § 924(c)(3)(B) argument;[5] (6) that RICO conspiracy is not a crime of violence;[6] (7) that conspiracies cannot constitute force elements;[7] (8) the prosecution violated double

---

[1] Dkt. 1141, at 4, 13-15; Dkt. 1151, at 4.
[2] Dkt. 1141, at 20.
[3] Dkt. 1441, at 28.
[4] Dkt. 1141, at 17-24.
[5] Dkt. 1272, at 11-13.
[6] Dkt. 1272, at 16.
[7] Dkt. 1272, at 18.

jeopardy because multiple § 924(c) offenses arose from one predicate act;[8] (9) that § 924(c)(3)(B) is impermissibly vague in light of *Johnson II* and *Dimaya*;[9] (10) that conspiracy to commit murder is no longer a crime of violence in light of *Dimaya*;[10] (11) that the court improperly instructed the jury;[11] and (12) that conspiracy to murder under RICO is not a crime of violence because conspiracy under the Guidelines is broader than the charged RICO conspiracy.[12]

The court finds that five of Ramirez's claims (Arguments 5, 6, 8, 11, and 12) are time-barred, because they reflect new claims or theories in the case. *See United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000). These arguments were raised only in the defendant's November 20, 2017 Traverse (Dkt. 1272) and in his 2018 Motion to Amend. (Dkt. 1314), which were filed more than one year after his conviction became final on January 11, 2016. Unlike Arguments 7, 9, and 10, which elaborate on the defendant's timely *Johnson* and *Dimaya* claim (Argument 3) in his original Motion to Vacate (Dkt. 1141) and which the court considers separately below, the new arguments rely on "facts that differ in both time and type" from those presented in the timely Motion to Vacate. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The new arguments address the constitutional effectiveness of appellate counsel, attacks the Ramirez's Count 1 RICO

---

[8] Dkt. 1272, at 19.
[9] Dkt. 1301, at 2-4.
[10] Dkt. 1302, at 4-5.
[11] Dkt. 1302, at 6.
[12] Dkt. 1302, at 6.

4

conspiracy conviction, present a double jeopardy claim, and challenge the jury instructions. These claims are different in form and substance from the original four arguments made in Ramirez's Motion to Vacate, and thus do not relate back to the original motion. Fed.R.Civ.P (15)(c)(2).[13] Thus, the court considers the four timely arguments advanced by the defendant.

**1. *Brady* Violation**

In his motion to vacate, Ramirez contends that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that it was relying on the allegedly perjurious testimony of Russell Worthey. (Dkt. 141, at 4). Worthey, a Norteño member testifying for the government, described Ramirez's participation in a 2009 shooting in Dodge City, Kansas.

---

[13] In addition, Arguments 6 (arguing a RICO conspiracy cannot constitute a crime of violence, 8 (arguing double jeopardy), 11 (challenging the jury instructions) and 12 (again contending a RICO conspiracy cannot be a qualifying violent offense) are procedurally barred by the defendant's failure to raise them in his direct appeal. *See United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017); *United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002). The defendant has failed to demonstrate why the procedural bar should not apply — either because there was good cause for failing to raise these issues, and that the failure to consider the issue will result in actual prejudice, or because the bar will work a fundamental miscarriage of justice. *See United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004). Each of these arguments could have been made in Ramirez's direct appeal. (To the extent defendant challenges the use of RICO conspiracy as a crime of violence, such argument would be premised on *United States v. Johnson* (*Johnson I*), 559 U.S. 133 (2010), which was decided prior to his direct appeal.) Further, defendant has shown no prejudice. He has failed to show the jury would not have convicted him with different instructions, or that double jeopardy in fact applied (Counts 6, 9, and 13 alleged discrete underlying criminal acts). Nor did the RICO conspiracy affect the defendant's § 924(c) convictions on Counts 6, 9, and 13, which were based on VICAR. Finally, defendant has failed to show any miscarriage of justice, meaning a constitutional violation has "probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The court has carefully reviewed the record of the trial and the jury's verdict, showing multiple and repeated violent acts by the defendant, and concludes that record precludes any claim of miscarriage of justice.

5

The defendant, however, expressly challenged the Worthey's allegedly false testimony both in his Motion for New Trial and his direct appeal as violating his rights under both *Brady* and *Napue v. Illinois*, 360 U.S. 264 (1959). The Tenth Circuit concluded that the government had not violated Brady because the allegedly suppressed information as to two meetings between Worthey and law enforcement, which included discussions of the effect of Worthey's cooperation on an unrelated state court murder case, was not material under circumstances of the case.

> Several considerations convince us that disclosure of the meetings would not have affected the verdict. [W]e do not see, and Defendants do not explain, how the promise of leniency for testimony in a state proceeding would influence the witness's testimony in a federal trial about a totally different crime. It is one thing to say, as courts often have, that a promise of leniency in return for favorable testimony can induce a witness to embellish or even falsify that testimony. But it is quite another to suggest that a witness will commit perjury in one case because he may receive a benefit from testifying in a wholly unrelated case. Here, the prospective benefit to Worthey from offering information about the state offense could induce him only to embellish his testimony about *that* case.

793 F.3d at 1205 (emphasis in original, citation omitted). In addition, the court noted the date of the meetings "forecloses the possibility that they corrupted Worthey's testimony," because he had already given substantially the same story on three previous occasions, and the defendants had otherwise "vigorously impeached Worthey at trial." *Id*. at 1206. Worthey under cross-examination

> acknowledged that the sentencing guidelines indicated that he would most likely be sentenced to less than life imprisonment; that his plea agreement provided that the government would bring no further charges and would file a motion to reduce his sentence because of his guilty plea, his adoption of a statement of facts incriminating Defendants, and his commitment to

> testify against Defendants; and that the government could renege if it did not like his testimony. He also admitted that he was a gang member; that he had fought rival gang members; that he managed the gang's money to help imprisoned gang members and to buy drugs and guns; that he used drugs and had once traded some speakers and an amplifier for methamphetamine when he was 14 or 15; that he had been convicted of two felony burglaries; that he had pleaded guilty to an assault involving a tire iron; that he had once gotten into a fistfight with Defendant Ramirez; that he was a cousin of fellow cooperating witness Wright; that pending state charges for assault were dropped only because the federal government decided to prosecute this case; and that before his arrest he had lied about his involvement in the trailer-park shooting. Further, the jury was instructed to treat with greater care the testimony of a witness who provides evidence in exchange for personal advantage. And in closing argument, counsel for both Defendants emphasized Worthey's plea agreement as a reason not to believe him. Any additional impeachment stemming from the undisclosed meetings would have provided only marginal additional support for the defense and was not material.

*Id.* (internal quotation and citation omitted).

Because the defendant's *Brady* argument was previously presented to and rejected by the Tenth Circuit during his direct appeal, it cannot be presented again in the form of a collateral attack. *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989).

## 2. Defective Indictment

Ramirez argues the Indictment was defective because, in reference to aiding and abetting under 18 U.S.C. § 2, the Indictment failed to allege that his conduct was willful, and "did not include the words Aids, Abets, Counsel, Commands, Induces and Procures." (Dkt. 1141, at 23-24). The court finds that defendant's argument is precluded because the argument could have been, but was not, raised in his direct appeal. "[C]laims

7

not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Here, the defendant has failed to show why the rule of procedural default should not apply. Unlike the defendant's § 924(c) argument (addressed below), the defendant's argument relies on no new developments in the law; the claims that the Indictments should have tracked the statutory language of 18 U.S.C. § 2 or that the court should have included language of *mens rea* were both arguments which could have been advanced on direct appeal.

Even if procedural default were not applicable, the defendant's arguments would not justify the relief sought. Aiding and abetting is implicitly included in substantive offense indictments, and it is not necessary to separately plead it. *United States v. Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006). Further, the Indictment did contain a *mens rea* requirement, which included the allegations that the defendant acted "knowingly" and (in some instances) "knowingly and intentionally." Moreover, an indictment need not allege a particular *mens rea*, where it alleges specific statutory violation and the requisite intent may be inferred (as here) from the indictment as a whole. *See United States v. Woodruff*, 296 F.2d 1041, 1046 (11th Cir. 2002). Finally, any error the language of the Indictment was harmless, since the court carefully and correctly instructed the jury as the element of intent. (Dkt. 819, at 43).

**3. Vagueness of § 924(c)**

The defendant argues that his convictions under Counts 6, 9, and 13, for violent crimes related to § 924(c)(1)(A) should be vacated because the statutory definition of violence is impermissibly vague. The argument, first advanced in Ramirez's original motion to vacate (Dkt. 1141), repeated in his second (Dkt. 1155), and echoed in Arguments 7, 9, and 10 presented in his Traverse and Motion to Amend (Dkt. 1272, at 18; 1302, at 2-5), relies on recent decisions by the Supreme Court in *United States v. Johnson* (*Johnson II*), 135 S.Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S.Ct. 2018 (2018), as well as the decision of the Tenth Circuit in *United States v. Salas*, 889 F.3d 681 (10th Cir. 2018). In *Johnson II* and its progeny, the Supreme Court recognized that the residual clause definition of a crime of violence contained in 18 U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague.

In its response to the defendant's original motion to vacate, the government argues (Dkt. 1237 at 10-11) that *Johnson II* has no effect on the case, because Ramirez was properly sentenced to life imprisonment given the murder convictions reflected in Counts 1-5, and that the additional consecutive sentences totaling 57 years were based on § 924(c)(1)(A)(i), not the residual clause contained in § 924(e)(2)(B)(ii). In the government's response (Dkt. 1314) to Ramirez's Traverse and Motion to Amend, it argues more fully, presenting two alternate rationales for supporting the challenged counts. First, it contends (*id.*, at 23-26) that the convictions for possession of a weapon in aid of a violent crime should be upheld as grounded in the "elements clause" of § 924(c)(3)(A), which defines a crime of violence as an offense which "has as an element the use, attempted use, or threatened use of

9

physical force against the person or property of another. Second, it argues (*id*., at 27-37) that *Salas* is not controlling because it has not been made retroactive to cases on collateral appeal, that *Dimaya* does not require a categorical approach or render § 924(c)(3)(B) unconstitutionally vague, and that convictions may be upheld under a case-specific analysis.

The second argument is no longer tenable in light of the Supreme Court's intervening decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), expressly holding that the statute's residual clause, § 924(c)(3)(B), is unconstitutional. Accordingly, the defendant's convictions for Counts 6, 9, and 13 cannot be supported by reference to that clause.

However, as noted earlier, § 924(c)(3)(A) provides a separate, elements-based definition of a crime of violence. Here, the defendant was charged in Counts 6, 9, and 13 with three specific offenses: respectively, "murder," "aggravated robbery," and "aggravated assault." Murder is a crime of violence for purposes of § 924(c)(3)(A*). United States v. Sarracino*, 724 Fed.Appx. 673 (10th Cir. 2018) (affirming decision that federal "second-degree murder conviction qualified as a crime of violence under the elements clause" of USSG § 4B1.2(a)(1), which uses a similar definition).[14] Aggravated assault

---

[14] *See also Thompson v. United States*, 924 F.3d 1153 (11th Cir. 2019) ("regardless of any vagueness challenge to § 924(c)(3)(B)'s residual clause, [federal] second-degree murder … categorically qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause"); *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) (federal murder is a crime of violence under § 924(c)(3)(A) because "[c]ommon sense dictates that murder is categorically a crime of violence under the force clause"); *United States v. Russell*, No. 05-CR-401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) (notwithstanding

under Kansas law is also a crime of violence under an elements analysis. *See United States v. Benton*, 876 F.3d 1260, 1263 (10th Cir. 2017).

The government acknowledges the issue of whether Kansas aggravated robbery is a crime of violence was presented to the Tenth Circuit in *United States v. Bong*, and agrees that if the court determines aggravated robbery is not a crime of violence, then Ramirez is entitled to vacatur of his conviction on Count 9. (Dkt. 1314, at 25 n. 3). Subseqeuently, the Tenth Circuit determined that Kansas aggravated robbery is not a crime of violence, since the statute applies to any robbery accompanied by the "simple possession of a weapon, rather than actual use of a weapon." *United States v. Bong*, 913 F.3d 1252, 1266 (10th Cir. 2019). As a result, "merely being 'armed' with a weapon during the course of a robbery is not sufficient to render the crime a 'violent crime'" for purposes of the ACCA." *Id.*

**4. Ineffective Assistance of Counsel.**

Finally, Ramirez argues his right to effective representation was violated when his attorney performed ineffectively. Constitutionally adequate representation is absent if two elements exist: the actual performance of counsel fell below an objective standard of reasonableness, and this has resulted in prejudice to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). The burden is on the defendant to show that his

---

*Johnson* and *Dimaya*, murder in aid of racketeering "qualifies as a 'crime of violence' under the elements clause of § 924(c)(3), not its residual clause").

right to representation was violated. *See Beeler v. Crouse*, 332 F.2d 783 (10th Cir 1964). And in doing so, the defendant must show "specific and particularized" deficiencies, rather than "general or conclusory" complaints about his attorney's performance. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled on other gds, Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001) (en banc).

A counsel's performance is constitutionally deficient if she made "errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The attorney's performance is viewed objectively and in light of prevailing professional norms. *Id*. at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential" to avoid misleading hindsight. *Id*. at 689.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be a considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (internal quotation and citations omitted).

Prejudice arises if there is "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, a "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Id*. Thus, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome." *Id*. at 693. Rather, the defendant must show "the decision reached would reasonably likely have been different absent the errors." *Id*. at 696. The court thus looks to the entire case, and

> must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Id*. at 695-96.

Applying these standards here, the court concludes that the defendant has failed to demonstrate any constitutional deprivation. First, the court finds that the defendant's conclusory litany of alleged errors fails to demonstrate that counsel's performance was objectively deficient. As indicated earlier, Ramirez alleges his counsel was deficient in failing to conduct a pretrial investigation, to seek a bill of particulars, to seek suppression, to challenge a government witness for alleged perjury, to adequately impeach or examine witnesses, to object to the Presentence Report or obtain a minor role reduction, and to object to the allegedly deficient indictment.

The record does not support any finding of objectively deficient performance. Counsel investigated the case prior to trial sufficiently to present an engaged and professional defense. The defendant has not identified any substantial fact which counsel should have been able to discover with additional diligence. The investigation, moreover, was sufficient to present numerous motions challenging the government's case. (Dkt. 424, 425, 426, 430, 541, 542, 544). Counsel filed not one motion to suppress, but five (Dkt. 424, 425, 426, 541, 542), and indeed filed his own motion for a bill of particulars (Dkt. 430), but also joined (Dkt. 423) the similar motions of his co-defendants. The court granted in part the request for a bill of particulars. (Dkt. 494). Counsel also filed two motions to dismiss the Indictment (Dkt. 430, 544), and submitted objections to the Presentence Report. (Dkt. 869, 874).

The jury found Ramirez guilty of First Degree Murder. Counsel was not deficient in failing to seek a reduction for having a "minor role" in the offense. Similarly, the defendant has failed to point to any fatal defect in the Indictment (other than the errors he identifies in his first argument, which are addressed above).

Ramirez argues that one of the government's witnesses committed perjury, and that his counsel failed to effectively counter that testimony. Ramirez previously advanced this claim in his contention that the government violated its duties under *Brady* and *Napue*. The argument was rejected in his direct appeal. Further, there is no evidence that counsel, at the time of the trial, had any reason to believe the witness was testifying perjuriously.

The conclusory allegations with respect to a failure to effectively examine witnesses fail to demonstrate a constitutional violation. The manner in which a witness is examined generally is committed to the tactical judgment of counsel. The court has reviewed the trial records, and finds that defendant's counsel actively and energetically cross-examined the government's witnesses. This examination included the exploration of potential bias or prejudice, and reference to potentially conflicting prior statements.

The court accordingly finds that defendant has failed to show his counsel was constitutionally deficient. The court here addresses the first prong because its review of the record amply confirms counsel's performance was not deficient, although this conclusion is not essential to the court's decision. In *Strickland*, the Supreme Court that the prejudice prong by itself may frequently preclude allegations of ineffective assistance: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 696.

Here, the defendant completely fails to demonstrate any reasonable likelihood of a more favorable result. The government presented an extensive case through 36 witnesses. Five of these were Ramirez's confederates and co-conspirators who testified as cooperating witnesses. There has been no showing that further investigation, additional motions, or different cross-examination would have likely yielded a more favorable result.

In summary, the court vacates Ramirez's conviction on Count 9, and sets aside the prior Judgment to the extent that it incorporates the conviction for Count 9 and imposes a sentence of imprisonment based on that count. (Dkt. 896). The court hereby corrects the sentence from a term of imprisonment of life plus 57 years to be served consecutively to imprisonment for life plus 50 years to be served consecutively.

Correction rather than a full resentencing following a new hearing is appropriate because the VICAR sentence for aggravated robbery reflects only a small portion of the defendant's sentence, causing a discrete and consecutive addition to the main life sentence generated by the murder conviction. The total sentencing package largely remains intact. *See United States v. Brown*, 879 F.3d 1231, 1236 (sentence correction is "a more limited remedy, responding to a specific error" which does not require a resentencing hearing). *See also United States v. Hernandez*, 735 F. App'x 998, 1000–02 (11th Cir. 2018); *Alls v. United States*, 2016 WL 1109002, at *3-4 (M.D. Fla. March 8, 2016) (no hearing required where court modified sentence rather than vacating it in its entirety).

The court denies the defendant's request for a hearing and for appointment of counsel (Dkt. 1275). The court finds that the defendant has adequately and articulately (if ultimately unsuccessfully) presented his arguments. Representation by counsel, or a hearing on the issues presented, would not yield any different result.

The court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C.

§ 2253(c)(2). Such a certificate may issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). When a court's ruling is based on procedural grounds, a movant must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because it is clear that the arguments rejected by the court are untimely, precluded by adverse court rulings, or reflect wholly unsupported claims of ineffective assistance, the court finds that defendant has not satisfied these standards. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

IT IS ACCORDINGLY ORDERED this day of August, 2019 that the defendant's Motions to Vacate, Traverse, and Motion to Amend (Dkt. 1155, 1237, 1272, and 1302), are granted in part and denied in part as provided herein. The court also denies defendant's Motion for Hearing and Appointment of Counsel (Dkt. 1275). The court vacates the defendant's conviction of Count 9, and will enter an appropriate amended judgment.

s/ J. Thomas Marten
J. Thomas Marten, Judge